**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| PACIFIC RESEARCH GROUP PTE. LTD. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 7:26-cv-00186 |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| ANALOG DEVICES, INC., | § | |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Pacific Research Group Pte. Ltd. ("Pacific Research" or "Plaintiff"), by and through its attorneys, files this Complaint for Patent Infringement against Analog Devices, Inc. ("ADI" or "Defendant") and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 271, et seq., to enjoin and obtain damages resulting from Defendant's unauthorized use, sale, and offer to sell in the United States, of products, methods, processes, services and/or systems that infringe Plaintiff's United States patents, as described herein.

2.      Defendant manufactures, provides, uses, sells, offers for sale, imports, and/or distributes infringing products and services, and encourages others to use their products and services in an infringing manner, as set forth herein.

3.      Plaintiff seeks past and future damages and prejudgment and post-judgment interest for Defendant's infringement of the Asserted Patents, as defined below.

1

## THE PARTIES

4.      Pacific Research is the current owner and assignee of the Asserted Patents.

5.      Pacific Research is a company organized under the laws of Singapore with its principal place of business located at 160 Robinson Road, #24-09, SBF Center, Singapore, 068914.

6.      ADI is a company organized and existing under the laws of the Commonwealth of Massachusetts. ADI may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 East 7th Street, Suite 620, Austin, Texas, 78701-3218.

7.      ADI describes itself as "a global semiconductor leader that bridges the physical and digital worlds to enable breakthroughs at the Intelligent Edge. ADI combines analog, digital, AI, and software technologies into solutions that combat climate change, reliably connect humans and the world, and help drive advancements in automation and robotics, mobility, healthcare, energy and data centers."[1]

8.      ADI states its analog technology portfolio "is comprised of sensor and actuator products, including products based on micro-electro-mechanical systems (MEMS) technology. MEMS technology enables us to build extremely small sensors that incorporate an electromechanical structure and the supporting analog circuitry for conditioning signals obtained from the sensing element."

## JURISDICTION AND VENUE

9.      This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Accordingly, this Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

---

[1] https://www.analog.com/en/who-we-are/corporate-information.html.

10.    This Court has personal jurisdiction over Defendant. Defendant conducts business and has committed acts of patent infringement in this Judicial District, the State of Texas, and elsewhere in the United States.

11.    Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

12.    Defendant has infringed the Asserted Patents within this District and the State of Texas by making, using, distributing, marketing, offering, and/or importing in or into this District and elsewhere in the State of Texas, products that infringe the Asserted Patents, including the Accused Products. Defendant, directly and through intermediaries, makes, uses, offers, imports, distributes, advertises, promotes, and/or otherwise commercializes such infringing products in or into this District and the State of Texas. Defendant regularly conducts and solicits business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

13.    This Court has personal jurisdiction over Defendant pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 et seq.

14.    Personal jurisdiction exists over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within this District and the State of Texas, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within this District and the State of Texas.

15.    This Court also has personal jurisdiction over Defendant, in part, because Defendant maintains continuous and systematic business in this District, including by providing infringing products to the residents of this District that Defendant knew would be used within this

3

District, and by soliciting business from the residents of this District.

16.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1400(b), because ADI has maintained established and regular places of business in this District, has transacted business in this District, and has committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below. Venue is proper because ADI conducts substantial business in this District and has committed acts of infringement here.

17.    Upon public information and belief, and as discussed above, ADI has physical facilities and employees in Texas, including an office at 5001 Plaza on the Lake Suite 250, Austin, Texas 78746.

**THE ASSERTED PATENTS**

18.    On March 26, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,402,666 (the "'666 Patent") entitled "Magneto Meter Using Lorentz Force For Integrated Systems." A true and correct copy of the '666 Patent is attached hereto as Exhibit A.

19.    Pacific Research is the owner and assignee of all right, title, and interest in and to the '666 Patent, including the right to assert all causes of action arising under the '666 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

20.    On March 17, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,981,560 (the "'560 Patent") entitled "Method And Structure of Sensors and MEMs Devices Using Vertical Mounting with Interconnections." A true and correct copy of the '560 Patent is attached hereto as Exhibit B.

21.    Pacific Research is the owner and assignee of all right, title, and interest in and to the '560 Patent, including the right to assert all causes of action arising under the '560 Patent and

4

the right to sue and obtain any remedies for past, present, or future infringement.

22.    On June 28, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,376,312 (the "'312 Patent") entitled "Method For Fabricating a Transducer Apparatus." A true and correct copy of the '312 Patent is attached hereto as Exhibit C.

23.    Pacific Research is the owner and assignee of all right, title, and interest in and to the '312 Patent, including the right to assert all causes of action arising under the '312 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

24.    On March 12, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,395,252 (the "'252 Patent") entitled "Integrated MEMS and CMOS package and Method." A true and correct copy of the '252 Patent is attached hereto as Exhibit D.

25.    Pacific Research is the owner and assignee of all right, title, and interest in and to the '252 Patent, including the right to assert all causes of action arising under the '252 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

26.    The '666 Patent, '560 Patent, '312 Patent, and the '252 Patent are collectively referred to as the Asserted Patents.

27.    Pacific Research has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Asserted Patents.

## FACTUAL ALLEGATIONS

28.    The Asserted Patents relate to innovative improvements to semiconductor packaging architectures for integrating MEMs devices and integrated circuits.

29.    On information and belief, Defendant's MEMS-based sensor products identified herein, including but not limited to the ADXL366, ADXL362, ADXL367, ADXL355, ADA4571, and ADA4570, among others, have been and continues tobe made, imported, offered for sale, sold,

and/or distributed within the United States, including through Defendant's authorized distributors, and, by way of example, ADI's website identifies authorized distributors that offer and ship such products into the United States.



*See* https://www.analog.com/en/support/find-sale-office-distributor.html (last visited April 28, 2026).

30.    As an example, the ADXL366 product line is available for purchase in the United States, including but not limited to, through Defendant's website:

*See* https://www.analog.com/en/products/adxl366.html.

6

31.      As another example, the Defendant's ADA4571 Integrated AMR Angle Sensor and Signal Conditioner is available for purchase in the United States, including but not limited to through Defendant's website:



*See* https://www.analog.com/en/products/ada4571.html (last accessed April 28, 2026).

## COUNT ONE
### INFRINGEMENT OF U.S. PATENT NO. 8,402,666

32.    Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-31 of the Complaint as though fully set forth herein.

33.    The claims of the '666 Patent are valid and enforceable.

34.    Defendant has and continues to directly infringe the '666 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '666 Patent. Upon information and belief, such products include at least the product lines of MEMS devices, including but not limited to the ADXL366 product line, the ADA4571 product line and all similar products.

35.    For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '666 Patent.

36.    Claim 1 of the '666 Patent recites:

An integrated electronic compass and circuit system

comprising: a semiconductor substrate;

one or more CMOS integrated circuits formed on one or more portions of the semiconductor substrate; and

an electronic compass device operably coupled to the one or more CMOS integrated circuits.

'666 Patent, Cl. 1.

37.    For example, each of the Accused Products is an integrated compass and circuit system, such as Defendant ADA4571:

8

## Part Details

The ADA4571 is an anisotropic magnetoresistive (AMR) sensor with integrated signal conditioning amplifiers and ADC drivers. The ADA4571 produces two analog outputs that indicate the angular position of the surrounding magnetic field.

The ADA4571 consists of two die within one package, an AMR sensor, and a fixed gain (G = 40 nominally) instrumentation amplifier. The ADA4571 delivers clean and amplified cosine and sine output signals related to the angle of a rotating magnetic field. The output voltage range is ratiometric to the supply voltage.

The sensor contains two Wheatstone bridges, at a relative angle of 45° to one another. A rotating magnetic field in the x–y sensor plane delivers two sinusoidal output signals with the double frequency of the angle ($\alpha$) between sensor and magnetic field direction. Within a homogeneous field in the x–y plane, the output signals are independent of the physical placement in the z direction (air gap).

*See* https://www.analog.com/en/products/ada4571.html (Last Accessed April 29, 2026).

38.     On information and belief, each of the Accused Products includes a semiconductor substrate.



*Source: RE - optical image - decap - top view*



*Source: RE - SEM images - decap - angled top view*

39.     On information and belief, each of the Accused Products includes one or more CMOS integrated circuits formed on one or more portions of the semiconductor substrate.



Source: RE - optical image – decap



Source: RE - SEM images - decap - angled top view

40.    On information and belief, each of the Accused Products includes an electronic compass device operably coupled to the one or more CMOS integrated circuits.

11



Source: RE - optical image - decap - top view

41.    Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit E, which describes and demonstrates how Defendant infringes at least claim 1 of the '666 Patent.

42.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '666 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

43.    Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '666 Patent, including claim 1, under 35 U.S.C. § 271(b) without authority. Defendant has had actual knowledge of the '666 Patent and that the Accused Products infringe the '666 Patent, or has been willfully blind to such infringement, no later than April 7, 2026, when Plaintiff served a letter on Defendant which Defendant did not respond to or acknowledge. With specific intent to cause infringement by others, or while willfully blind to such infringement, Defendant has induced the direct infringement of the '666 Patent by third parties, including but not limited to, third-party semiconductor foundries, third party MEMS foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users. Defendant's actions constituting inducement include, but are not limited to, contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers, thereby

causing them to make, use, offer to sell, sell, and/or import into the United States the Accused Products, either literally or under the doctrine of equivalents.

44.    Defendant, with knowledge that these products, and/or the manufacture thereof, infringes the '666 Patent as of the date that the original complaint in this action was served on Defendant, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '666 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

45.    No later than the service of the Complaint, Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '666 Patent, but while remaining willfully blind to the infringement.

46.    Defendant has and continues to infringe one or more claims of the '666 Patent by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.

47.    Defendant is not licensed or otherwise authorized to practice the claims of the '666 Patent.

48.    Thus, by its acts, Defendant has injured Pacific Research and is liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '666 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

49.    As a result of Defendant's infringement of the '666 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

**COUNT TWO**
**INFRINGEMENT OF U.S. PATENT 8,981,560**

50.     Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-31 of the Complaint as though fully set forth herein.

51.     The claims of the '560 Patent are valid and enforceable.

52.     Defendant has and continues to directly infringe the '560 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products, including products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '560 Patent. Upon information and belief, such products include at least the ADI ADXL366 and all other similar products.

53.     For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '560 Patent.

54.     Claim 1 of the '560 Patent recites:

An integrated sensor device or electronic device, the device comprising:

a substrate member having a first surface region, the substrate member having at least one contact region;

at least one singulated integrated sensor or electronic device each coupled to a die member, each die member having a singulated surface region and at least one contact region, the singulated surface region(s) being coupled to the first surface region;

at least one first conductive material formed overlying at least the contact region(s) of the singulated integrated sensor or electronic device; and

at least one second conductive material formed overlying at least a portion of the first conductive material(s).

'560 Patent, Cl. 1.

55.    For example, each of the Accused Products is an integrated sensor or electronic device, such as Defendant LSM303AGR:



*See* https://www.analog.com/en/products/adxl366.html  (Last accessed April 30, 2026).

56.    On information and belief, the Accused Products include a substrate member having a first surface region, the substrate member having at least one contact region.



*Source: RE - SEM - decap - angled top view*

57.    On information and belief, the Accused Products include at least one singulated integrated sensor or electronic device each coupled to a die member, each die member having a singulated surface region and at least one contact region, the singulated surface region(s) being coupled to the first surface region.



*Source: RE - optical image - decap - top view*

58.  On information and belief, the Accused Products include at least one first conductive material formed overlying at least the contact region(s) of the singulated integrated sensor or electronic device.



*Source: RE - optical image - decap - top view*

59.    On information and belief, the Accused Products include at least one second conductive material formed overlying at least a portion of the first conductive material(s).



Source: RE - X Ray - side view

60.    Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit F, which describes and demonstrates how Defendant infringes at least claim 1 of the '560 Patent.

61.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '560 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

62.    Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '560 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority. Defendant has had knowledge of the '560 Patent and that its Accused Products infringe no later than April 7, 2026, when a letter regarding these patents was served on Defendant. Defendant, with specific intent to cause infringement, knowingly and intentionally induces others, including third-party semiconductor or MEMs foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '560 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendant has induced infringement by contracting for the third-party

manufacture of, and/or providing the Accused Products to the Third-Party Infringers. Defendant had the intent to cause infringing acts by others or, alternatively, acted with willful blindness to the infringement by others.

63.     Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '560 Patent no later than service of the Complaint, the date a letter concerning the '560 Patent was served on Defendant, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '560 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

64.     As of the date that the original complaint in this action was served on Defendant, Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '560 Patent, but while remaining willfully blind to the infringement.

65.     Defendant is not licensed or otherwise authorized to practice the claims of the '560 Patent.

66.     Thus, by its acts, Defendant has injured Pacific Research and is liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '560 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

67.     As a result of Defendant's infringement of the '560 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## COUNT THREE
## INFRINGEMENT OF U.S. PATENT 9,376,312

68.    Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-31 of the Complaint as though fully set forth herein.

69.    The claims of the '312 Patent are valid and enforceable.

70.    Defendant has and continues to directly infringe the '312 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products made using the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '312 Patent. Upon information and belief, such products include at least the LSM303AGR and all other products that are not fabricated in a materially different manner.

71.    For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '312 Patent.

72.    Claim 1 of the '312 Patent recites:

> A method of fabricating a transducer apparatus, the method comprising: providing a substrate member having a surface region;
>
> forming a movable base structure having a base surface region;
>
> removing at least one portion of the movable base structure to form a center cavity with a cavity surface region;
>
> forming at least one center anchor structure spatially disposed within a substantially circular portion of the surface region, the at least one center anchor structure(s) being configured within a vicinity of a center of the surface region that is within the center cavity;
>
> forming at least one spring structure coupled to at least one portion

20

of the cavity surface region, the at least one spring structure being coupled to the at least one center anchor structure; and

forming at least one capacitor element, the at least one capacitor element being spatially disposed within a vicinity of the cavity surface region.

'312 Patent, Cl. 1.

73.    For example, the Defendant's ADXL366 includes a semiconductor device that implements the claimed method. The ADXL366 is an ultralow-power, 3-axis digital accelerometer featuring embedded motion detection capabilities. The ADXL366 includes both an SPI and I²C digital interface that supports high-speed data communication. The device incorporates configurable detection functions, including activity, inactivity, and wake-up modes, and can be configured to generate interrupt signals in response to detected motion events. The ADXL366 is available in a compact package and is designed for low-power operation across a wide range of applications.

Source: https://www.analog.com/media/en/technical-documentation/data-sheets/adxl366.pdf.

74.    On information and belief, the Accused Products are manufactured using a process that provides a substrate member having a surface region.



*Source: RE - SEM image - cross section - side view*

75.    On information and belief, the Accused Products are manufactured using a process that forms a movable base structure having a base surface region.



*Source: RE - optical image - decap - top view*

76.    On information and belief, the Accused Products are manufactured using a process that removes at least one portion of the movable base structure to form a center cavity with a cavity surface region.



*Source: RE - SEM image - cross section - side view*

77.    On information and belief, the Accused Products are manufactured using a process that forms at least one center anchor structure spatially disposed within a substantially circular portion of the surface region, the at least one center anchor structure(s) being configured within a vicinity of a center of the surface region that is within the center cavity.



*Source: RE - optical image - decap - top view*

78.　　On information and belief, the Accused Products are manufactured using a process that forms at least one spring structure coupled to at least one portion of the cavity surface region, the at least one spring structure being coupled to the at least one center anchor structure.



*Source: RE - optical image - decap - top view*

24

79.    On information and belief, the Accused Products are manufactured using a process that forms at least one capacitor element, the at least one capacitor element being spatially disposed within a vicinity of the cavity surface region.



Source: RE - optical image - decap - top view



Source: RE - SEM image - cross section - side view

80.    Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit G, which describes and demonstrates how Defendant infringes at least claim 1 of the '312 Patent.

81.    Fact and expert discovery are expected to confirm that the Accused Products infringe the '312 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

82.    Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '312 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority. Defendant has had knowledge of the '312 Patent and that its Accused Products infringe no later than April 7, 2026, having received a letter providing notice of the '312 Patent, as well as the date that the original complaint in this action was served on Defendant.

83.    Defendant, with specific intent to cause infringement, knowingly and intentionally induces others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '312 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendant has induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers. Defendant had the intent to cause infringing acts by others or, alternatively, acted with willful blindness to the infringement by others.

84.    Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '312 Patent no later than April 7, 2026 when a letter regarding the '312 Patent was

26

provided to Defendant, knowingly and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '312 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

85.    No later than April 7, 2026, the date a letter regarding the '312 Patent was served on Defendant, Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '312 Patent, but while remaining willfully blind to the infringement.

86.    Defendant has and continues to infringe one or more claims of the '312 Patent by importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.

87.    Defendant is not licensed or otherwise authorized to practice the claims of the '312 Patent.

88.    Thus, by its acts, Defendant has injured Pacific Research and is liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '312 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

89.    As a result of Defendant's infringement of the '312 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

27

**COUNT FOUR**
**INFRINGEMENT OF U.S. PATENT 8,395,252**

90.     Pacific Research incorporates by reference the allegations set forth in Paragraphs 1-31 of the Complaint as though fully set forth herein.

91.     The claims of the '252 Patent are valid and enforceable.

92.     Defendant has and continues to directly infringe the '252 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products which incorporate the patented methods including, but not limited to, products that satisfy each and every limitation of one or more claims of the '252 Patent. Upon information and belief, such products include at least the Defendant's ADXL366 product line and all other products with an apparatus for packaging MEMS structures that are not materially different.

93.     For example, the Accused Products incorporate and/or implement elements that are identical or equivalent to each claimed element of the patented invention pointed out by at least Claim 1 of the '252 Patent.

94.     Claim 1 of the '252 Patent recites:

> An apparatus for packaging micro electro-mechanical systems (MEMS) and integrated circuits (ICs), the apparatus comprising:
> a substrate member having a surface region;
>
> a semiconductor substrate comprising one or more integrated circuits thereon, the semiconductor substrate being bonded to a portion of the surface region and having an upper surface region;
>
> one or more MEMS devices overlying an inner region of the upper surface region; an enclosure housing the one or more MEMS devices and configured overlying a first outer region of the upper surface region, the enclosure housing having an upper cover region; and
>
> one or more bonding structures, each of the bonding structures having a bonding pad within a vicinity of the upper cover region and provided within

28

a second outer region of the upper surface region,

wherein the second outer region is characterized by a width of about 100 microns and less, and wherein the first outer region is characterized by a width of about 200 microns and less.

'252 Patent, Cl. 1.

95.    For example, Defendant's ADXL366 includes apparatus for packaging micro electro-mechanical systems (MEMS) and integrated circuits. The ADXL366 is an ultra-low power, 3-axis MEMS accelerometer that consumes approximately 0.96 µA at a 100 Hz output data rate (ODR) and as little as 191 nA in motion-triggered wake-up mode, enabling always-on sensing for power-constrained applications. The ADXL366 incorporates integrated signal conditioning and digital processing capabilities, along with support for industry-standard digital communication interfaces, including SPI (4-wire) and I²C, allowing communication with host processors. The device is designed for reliable motion detection and monitoring across a variety of applications, including wearable devices, asset tracking, and industrial sensing. The ADXL366 is available in a compact 2.2 mm × 2.3 mm × 0.87 mm, 12-terminal land grid array (LGA) package.

Source: https://www.analog.com/media/en/technical-documentation/data-sheets/adxl366.pdf.

96.    On information and belief, the Accused Products include a substrate member having a surface region.



Source: RE - SEM image - angled top view

97.    On information and belief, the Accused Products include a semiconductor substrate comprising one or more integrated circuits thereon, the semiconductor substrate being bonded to a portion of the surface region and having an upper surface region.



Source: RE - SEM image - angled top view

98.    On information and belief, the Accused Products include one or more MEMS devices overlying an inner region of the upper surface region; an enclosure housing the one or more MEMS devices and configured overlying a first outer region of the upper surface region, the enclosure housing having an upper cover region.



*Source: RE - optical image - decap - top view*

99.    On information and belief, the Accused Products include one or more bonding structures, each of the bonding structures having a bonding pad within a vicinity of the upper cover region and provided within a second outer region of the upper surface region.



*Source: RE - optical image - decap - top view*

31



*Source: RE - optical image - top image*

100.    On information and belief, the Accused Products include that the second outer region is characterized by a width of about 100 microns and less, and wherein the first outer region is characterized by a width of about 200 microns and less.



101. Pacific Research adopts, and incorporates by reference as if fully stated herein, the exemplary claim chart attached as Exhibit H, which describes and demonstrates how Defendant infringes at least claim 1 of the '252 Patent.

102. Fact and expert discovery are expected to confirm that the Accused Products infringe the '252 Patent, for which further evidence may lie in whole or in part in technical documents to which Pacific Research does not presently have access.

103. Further, on information and belief, Defendant has and continues to indirectly infringe one or more claims of the '252 Patent, including claim 1, by inducing infringement under 35 U.S.C. § 271(b) without authority. Defendant has had knowledge of the '252 Patent and that its Accused Products infringe no later than April 7, 2026, the date a letter concerning the '252 Patent was served on Defendant. Defendant, with specific intent to cause infringement, knowingly and intentionally induces others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users (the "Third-Party Infringers") to directly infringe the '252 Patent, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States the Accused Products. Defendant has induced infringement by contracting for the third-party manufacture of, and/or providing the Accused Products to the Third-Party Infringers. Defendant had the intent to cause infringing acts by others or, alternatively, acted with willful blindness to the infringement by others.

104. Defendant, with knowledge that these products, and/or the manufacture thereof, infringe the '252 Patent as of the date that the original complaint in this action was served on Defendant, knowingly and intentionally induced, and continues to knowingly and intentionally

33

induce direct infringement of the '252 Patent by contracting for the third-party manufacture of, and/or providing the Accused Products to direct infringers.

105. As of the date that the original complaint in this action was served on Defendant, Defendant has induced infringement by others, including third-party semiconductor foundries, Defendant's distributors, other types of third-party manufacturers, customers, and/or end-users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others infringe the '252 Patent, but while remaining willfully blind to the infringement.

106. Defendant has and continues to infringe one or more claims of the '252 Patent by importing into the United States or offering to sell, selling, or using within the United States the Accused Products.

107. Defendant is not licensed or otherwise authorized to practice the claims of the '252 Patent.

108. Thus, by its acts, Defendant has injured Pacific Research and is liable to Pacific Research for directly and/or indirectly infringing one or more claims of the '252 Patent, whether literally or under the doctrine of equivalents, including without limitation claim 1.

109. As a result of Defendant's infringement of the '252 Patent, Pacific Research has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty with interest and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief from Defendant as follows:

a. For judgment that Defendant has infringed and continues to infringe the claims of the Asserted Patents;

b. For an accounting of all damages sustained by Plaintiff as a result of Defendant's acts of infringement;

c. For a mandatory future royalty payable by Defendant in relation to each sale of an Accused Product that is found to infringe one or more of the Asserted Patents and all future products which are not materially different from products found to infringe;

d. That the Court determine that Defendant's infringements were willful;

e. For a judgment and order requiring Defendant to pay Plaintiff's damages, costs, expenses, and pre- and post-judgment interest for its infringement of the '666, '560, '312, and '252 Patents as provided under 35 U.S.C. § 284;

f. For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

g. For such other and further relief in law and in equity as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all issues triable by a jury.

Dated: May 8, 2026                              Respectfully Submitted,

                                                */s/ Bradley D. Liddle*
                                                Paul J. Skiermont (TX Bar No. 24033073)
                                                Bradley D. Liddle (TX Bar No. 24074599)
                                                Michael C. Pomeroy (TX Bar No. 24098952)
                                                Michael D. Ricketts (TX Bar No. 24079208)
                                                SKIERMONT DERBY LLP
                                                1601 Elm Street, Suite 4400
                                                Dallas, TX 75201
                                                Phone: (214) 978-6600
                                                Fax: (214) 978-6601
                                                pskiermont@skiermontderby.com
                                                bliddle@skiermontderby.com
                                                mpomeroy@skiermontderby.com
                                                mricketts@skiermontderby.com

                                                **ATTORNEYS FOR PLAINTIFF**
                                                **PACIFIC RESEARCH GROUP**
                                                **PTE. LTD**